# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ASHLEE SMITH DISMUKES, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO.: |
| HYUNDAI POWER TRANSFORMERS, USA, INC., | ) |
| Defendant. | ) **PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY** |

## COMPLAINT

1. This is a suit brought under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §1981 in which the Plaintiff alleges that she experienced unlawful retaliation in response to her giving a truthful deposition in a race discrimination lawsuit.

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202. Venue is proper under 28 U.S.C. §1391, as the Defendant's principal place of business, as identified on the website for the Alabama Secretary of State, is 1819 5th Avenue North;

1

Birmingham, AL 35203[1] and the act which forms the Plaintiff's protected activity, her deposition, occurred in Birmingham, Alabama.

## ADMINISTRATIVE REMEDIES

4. On May 11, 2018, the Defendant suspended the Plaintiff without pay from her employment.

5. On June 18, 2018, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation. A copy of the Charge of Discrimination (420-2018-02732) is attached as Exhibit A.

6. On or about October 29, 2018, the Plaintiff learned the Defendant terminated her employment.

7. On November 14, 2019, the Plaintiff filed a second Charge of Discrimination alleging retaliation. A copy of the Charge of Discrimination (420-2019-00536) is attached as Exhibit B

8. On June 10, 2019, the EEOC issued Determinations for both Charges concluding that "[b]ased on evidence disclosed during the investigation, there is reason to believe more likely than not, Charging Party participated

---

[1] *Business Entity Records - Hyundai Power Transformers, USA, Inc.*, http://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=944425&page=name&file=&type=ALL&status=ALL&place=ALL&city= (last visited November 25, 2019)

Delaware with its principal address being 1819 5th Avenue North; Birmingham, Alabama 35203.

## FACTUAL BACKGROUND

15. HPT creates power transformers.

16. Mrs. Dismukes worked for the Respondent as a production specialist.

17. During her employment, she received positive performance evaluations and two merit raises.

18. Prior to May 11, 2018, HPT had not issued any discipline to Mrs. Dismukes.

19. Mrs. Dismukes reported to Ted Arkuszeshi.

20. Mrs. Dismukes duties including organizing and maintaining attendance records, including disciplinary points for tardiness, absences, and early departures.

21. Mrs. Dismukes kept information about time sheets in binders in her workspace.

22. Mrs. Dismukes observed African-American employees were treated disparately harsher from Caucasian and Korean employees as it related to discipline.

23. Mrs. Dismukes believed n good faith she was observing race discrimination.

24. Mrs. Smith complained to HPT's president J.S. Kim that she believed African-American employees were experiencing race discirmination.

25. Mrs. Dismukes also complained about the race dsicrimination she had observed to manager Sunchai Yun as well as to HPT's Chief Executive Officer.

26. After Mrs. Dismukes complained, she noticed that documents relating to attendance and points for Caucasian and Korean employees was taken from her office as well as other documents.

27. On the morning of May 10, 2018, Robin Ricks, a management level employee for HPT, informed Mrs. Dismukes that she would be giving a deposition later that day in a race discrimination case filed in federal court, *William Gipson v. Hyundai Power Transformers USA, Inc.*

28. Ms. Ricks gave Mrs. Dismukes a deposition notice from the Plaintiff's lawyer.

29. The deposition notice contained requests for documents.

30. Mrs. Dismukes believed she was legally obligated to produce the documetns requested.

31. Mrs. Dismukes was originally told by HPT that she could copy and produce the documents responsive to the notice if she gave HPT a copy of whatever she copied.

32. Mrs. Dismukes began making copies of the requested documents in front of HPT employees.

33. Mrs. Dismukes had two identical stacks - one for her to take and one for HPT to keep.

34. Henry Kim, a management level employee for HPT, approached Mrs. Dismukes while she was making copies and told her she could not take any documents with her.

35. Mrs. Dismukes responded that the documents had been requested in a legal document, the deposition notice, and she thought she was obligated to produce them.

36. Mr. Kim told Mrs. Dismukes she could not take the documetns with her and to stop making copies.

37. Mr. Kim soo so close to Mrs. Dismukes, he was almost touching her.

38. Mrs. Dismukes felt threatened by Mr. Kim.

39. Mr. Kim told Mrs. Dimukes that her job was on the line and made several comments indicating she had to choose between keeping her job and telling the truth in her deposition.

40. Another manager asked Mrs. Dismukes "Who are you for?" When Mrs. Dismukes asked him if he was asking her to lie in her dpeosition, he did not respond.

41. Mrs. Dimukes sopped making copies.

42. Mrs. Dismukes felt that she was being threatened with her job should she testify truthfully (but unfavorably) about HPT.

43. Mrs. Dismukes gave Mr. Kim the stack of documents she had been making for HPT.

44. Mrs. Dismukes took the other stack, the stack she had been making to take to the deposition, and in view of Mr. Kim and others, placed them in a wood lock box near her desk.

45. Mrs. Dismukes left for the deposition.

46. Mrs. Dismukes did not take any documents with her from HPT's property other than her deposition notice.

47. Nobody from HPT saw Mrs. Dismukes taking any documents, other than her deposition notice, from HPT's property.

48. HPT's video of Mrs. Dismukes leaving its facility for her deposition does not show her taking any HPT documents.

49. When Mrs. Dimukes arrived at her deposition at the office of Haynes & Haynes in Vestavia Hills, Alabama, she did not have any documents with her other than her deposition notice.

50. Nobody from HPT saw Mrs. Dismukes take any documents (other than her deposition notice) into the office where her deposition was to be held.

51. HPT's lawyer, Megan Cox, acknowledged during Mrs. Dismukes had not brought any company documents to the deposition.

52. During the deposition, Mrs. Dimsukes testified truthfully about the race discrimination she had observed.

53. Mrs. Dismukes deposition ended around 6:00 to 6:30 on May 10, 2018.

54. Following the deposition, another attorney for HPT, John Coleman, emailed Mr. Gipson's counsel, Alicia Haynes.

55. Mr. Coleman, who had not been at the deposition, appeared to have reviewed the documents Mrs. Dismukes copied and left at HPT because he wrote:

> Today hourly employee Ashlee Smith removed HPT documents from HPT premises without permission. It is our understanding she gave you possession of these documents. After examining them, the

enclosed handful appear to be the only ones that may be remotely responsive to discovery requests to HPT. We ask and expect that you will return the remaining documents to us immediately and that you delete any copies or images you or your staff may have made of them.

56. Mr. Coleman's accusations were false; Mrs. Dismukes had not removed removed HPT documents from HPT premises without permission nor had she given any documents to Ms. Haynes, her staff, and/or Mr. Gipson.

57. On the morning of May 11, 2018, the day before Mrs. Dismukes was scheduled to leave on a scheduled one-week paid vacation for her honeymoon, HPT told her she was being suspended without pay.

58. HPT told Mrs. Dismukes she was being suspended for taking company documents to the deposition and giving them to the Plaintiff in the *Gipson* case and/or his lawyer.

59. The reason given for the suspension was untrue.

60. HPT told Mrs. Smith she was on suspension without pay while it investigated whether she had taken company documents.

61. Mrs. Dismukes did not take HPT documents, nor did she give them to the Plaintiff in the *Gipson* case or his lawyer.

62. HPT communicated to Mrs. Dismukes that she was suspended in a public area in front of HPT employees who knew she had been in a deposition the day before.

63. Mrs. Dismukes was in tears after HPT told her she was suspended.

64. After a month, when HPT had not returned her to work, Mrs. Dismukes filed a Charge of Discrimination with the EEOC.

65. In response to an inquiry from Mrs. Dimukes counsel to HPT's lawyers about the status of Mrs. Dimukes employment, legal counsel for HPT emailed Mrs. Dismukes legal counsel on October 29, 2018, that Mrs. Dismukes had been terminated on August 15, 2018, but that the termination was effective May 11, 2018.

66. HPT's lawyers indicated that hte termination letter had been mailed to Mrs. Dismukes via certified mail on August 15, 2018.

67. Mrs. Dismukes did not receive the certified letter, nor did hse receive notice of any attempted deliveries of a certified letter from HPT.

68. The letter, which was emailed to Mrs. Dismukes counsel, did not have an address on it for Mrs. Dismukes.

69. After Mrs. Dismukes gave a deposition in the *Gipson* case, HPT began looking for reasons to terminate her employment.

70. After Mrs. Dismukes gave a deposition in the *Gipson* case, HPT imaged her computer and examined her internet history.

71. The reasons contained in the termination letter addressed to Mrs. Dismukes are vague and lack any type of detail.

72. The reasons contained in the termination letter addressed to Mrs. Dismukes do not allow her to identify the alleged conduct HTP contends led to her termination.

73. The reasons contained in the termination letter addressed to Mrs. Dismukes did not motivate HPT to terminate Mrs. Dimukes; Mrs. Dismukes deposition testimony motivated HPT to terminate her.

## COUNT I
## RETALIATION
(Title VII)

74. Mrs. Dismukes adopts and incorporates the allegations set forth above in support of this Count.

75. Section 704(a) of Title VII of the Civil Rights Act prevents retaliation by employers. The relevant statutory language reads

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

76. Mrs. Dismukes engaged in activities protected by Title VII.

77. Mrs. Dismukes was qualified for the position she held with HPT in May 2018.

78. Mrs. Dismukes experienced adverse actions from HPT, including suspension, scrutiny in an effort to find a reason to terminate her, and termination, as a result of her protected activities.

79. HPT retaliated against Mrs. Dismukes.

80. As a consequence of HPT's retaliatory conduct, Mrs. Dismukes was injured.

**WHEREFORE, PREMISES CONSIDERED**, Mrs. Dismukes respectfully requests the entry of judgment against Defendant HPT under Title VII of the Civil Rights Act of 1964, as amended, pursuant to an Order by which the Court:

a. awards compensatory damages;

b. awards punitive damages;

c. awards nominal damages;

d. awards injunctive relief, including training, backpay, reinstatement and/or reasonable front pay;

e. awards that relief which is fair, reasonable and just;

 f. awards a reasonable attorney's fee; and

 g. taxes costs against said defendant.

## COUNT II
## RETALIATION
(42 U.S.C. §1981)

81. Mrs. Dismukes adopts and incorporates the allegations set forth above in support of this Count.

82. It is well established that Section 1981 prohibits employers from taking adverse actions against employees in retaliation for their opposition to statutorily prohibited racial discrimination. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008).

83. Mrs. Dismukes opposed racial discrimination by HPT when she gave her deposition in the *Gipson* case on May 10, 2018.

84. The day following her deposition, she experienced materially adverse actions including a suspension without pay and HPT's efforts to find a justification to terminate her.

85. Mrs. Dismukes suffered a further materially adverse action when HPT terminated her employment.

86. The materially adverse actions suffered by Mrs. Dismukes and her protected activity, opposing race discrimination by HPT, are not completely unrlated.

13

87. The persons responsible for suspending Mrs. Dismukes, looking for reasons to fire her, and terminating her were aware of her deposition testimony because they were either told she was giving a deposition, present at the deposition, and/or told of the contents of her deposition.

88. Immediately following her deposition, Mrs. Dismukes began experiencing materially adverse actions.

89. The reasons offered by HPT for Mrs. Dismukes suspension and termination are pretexts for HPT's retaliatory motive.

90. HPT retaliated against Mrs. Dismukes.

91. As a consequence of HPT's retaliatory conduct, Mrs. Dismukes was injured.

**WHEREFORE, PREMISES CONSIDERED**, Mrs. Dismukes respectfully requests the entry of judgment against Defendant HPT under 42 U.S.C. §1981, pursuant to an Order by which the Court:

    a. awards compensatory damages;

    b. awards punitive damages;

    c. awards nominal damages;

    d. awards injunctive relief, including training, backpay, reinstatement and/or reasonable front pay;

    e. awards that relief which is fair, reasonable and just;

    f.    awards a reasonable attorney's fee; and

    g.    taxes costs against said defendant.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

*/s/ Heather Newsom Leonard*
Heather N. Leonard
Attorney Code: ASB-115-O61H
**ATTORNEY FOR PLAINTIFF**

**OF COUNSEL:**

HEATHER LEONARD, P.C.
2105 Devereux Circle
Suite 111
Birmingham, Alabama 35243
Phone:    (205) 977-5421
Facsimile:   (205) 278-1400
E-mail:    Heather@HeatherLeonardPC.com

**SERVE THE DEFENDANT VIA CERTIFIED MAIL:**

Hyundai Power Transformers, USA, Inc.
c/o President Juseok Kim
215 Fomar Parkway
Montgomery, AL 36105